IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Bridges Ann Mealing,                )<br>                                              )<br>                      Plaintiff,    )<br>                                              )<br>         vs.                               )<br>                                              )<br>Michael J. Astrue,                   )<br>Commissioner of Social Security,  )<br>                                              )<br>                      Defendant.    )<br>                                              ) | Civil Action No. 6:08-2478-HMH-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act.

**ADMINISTRATIVE PROCEEDINGS**

The plaintiff filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) benefits on July 27, 2005, and June 30, 2005, respectively, alleging that she became unable to work on May 20, 2004. The applications were denied initially and on reconsideration by the Social Security Administration. On

---

[1]A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

May 10, 2006, the plaintiff requested a hearing. The administrative law judge, before whom the plaintiff, her representative, and a vocational expert appeared on June 22, 2007, considered the case *de novo*, and on September 21, 2007, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The administrative law judge's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on May 8, 2008. The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1)     The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.
>
> (2)     The claimant has not engaged in substantial gainful activity since May 20, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416. 920(b) and 416.971 *et seq.*).
>
> (3)     The claimant has the following severe impairments: hypertension with bilateral retinopathy with loss of vision on the right, and an adjustment disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> (4)     The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CF Part 404, Subpart P, Appendix 1 (20 CFR 404.152(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> (5)     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light[2] unskilled work with no climbing or crawling and an accommodation for a sit/stand option at will and a restriction from work requiring exposure to work hazards. The claimant also is restricted to work in a low stress environment (requiring only occasional decision-making and

---

[2]Light work is described by the Commissioner of the Social Security Administration as requiring lifting and carrying 20 pounds occasionally and 10 pounds frequently as well as an ability to stand, sit, and walk each for 6 hours in an 8-hour workday, walk for 6 hours in an 8-hour workday.

changes in the work setting) with only occasional exposure to the general public. She cannot perform fine visual acuity.

(6)  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

(7)  The claimant was born on November 16, 1954 and was 49 years old, which is defined as an individual closely approaching advance age, on the alleged disability onset date, and attained age 50 as of November 16, 2004, which is defined as an individual closely approaching advanced age (20 CFR 404.1563 and 416.963).

(8)  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

(9)  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10)  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966).

(11)  The claimant has not been under a disability, as defined in the Social Security Act, from May 20, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and

who are under a "disability."  42 U.S.C. §423(a).  "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions.  An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment.  20 C.F.R. §404.1520.  If an individual is found not disabled at any step, further inquiry is unnecessary.  20 C.F.R. §404.1503(a).  *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work.  SSR 82–62.  The plaintiff bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. §423(d)(5).  He must make a prima facie showing of disability by showing he is unable to return to his past relevant work.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy.  The Commissioner may carry the burden of demonstrating the existence of jobs available in the

national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## EVIDENCE PRESENTED

The plaintiff was 49 years of age at the time of her alleged onset of disability. She has a high school education and past relevant work experience as a textile mill machine tender.

On October 6, 2004, the plaintiff was referred to Dr. Oksana Demedluk because of elevated blood pressure. Examination revealed swollen optic nerves with hemorrhages and critically elevated blood pressure (260/120), and the plaintiff was admitted to the hospital (Tr. 164). Lab tests indicated an excess amount of protein in the plaintiff's urine, and Dr. Pairach Pintavorn was asked to evaluate the plaintiff. The plaintiff reported that she had not taken her blood pressure medication for at least four years. Examination revealed blood pressure of 130/69 and no evidence of edema. Dr. Pintavorn opined that the plaintiff may have kidney failure secondary to hypertensive nephrosclerosis (hardening of the kidneys) and that her kidney function might improve once her blood pressure was better controlled. Dr. Pintavorn did not assess any restrictions or impose any functional limitations. Treatment records from November 2004 through November 2005 reflect that the plaintiff's hypertension was initially uncontrolled but became controlled with treatment. No restrictions on the plaintiff's activities or functional limitations were imposed by her physicians (Tr. 124-28),

An examination on November 14, 2005, revealed that the plaintiff's blood pressure was relatively normal (130/70) and she had no edema. She was assessed with stage four chronic kidney disease and provided sample hypertension medication. Dr. Pintavorn did not assess any restrictions or functional limitations (Tr. 195).

During June 2005, David Bang, O.D., diagnosed the plaintiff with hypertensive retinopathy of the left eye (Tr. 130-32).

In September 2005, Dr. Louis Caldwell reviewed the plaintiff's records and completed a Physical Residual Functional Capacity Assessment. Dr. Caldwell determined that the plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, and had limited far acuity and depth perception. He also determined that the plaintiff's allegations of an inability to work were not supported by her medical records (Tr. 167-72).

During March 2006, Dr. Jean Smolka reviewed the plaintiff's records and completed a Physical Residual Functional Capacity Assessment. Dr. Smolka determined that the plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, and had limited depth perception (Tr. 183-90).

Also in March 2006, Dr. Jeffrey Richards reviewed the plaintiff's records and determined that she had a visual defect in her left eye that resulted in limited left eye vision (Tr. 177).

A follow-up appointment with Dr. Pintavorn in June 2006, indicated that the plaintiff had no change in her vision (Tr. 205).

On June 30, 2006, Dr. Sajid M. Akhtar reported that the plaintiff did not have significant edema but may have some element of fluid retention due to her stage 4 chronic kidney disease (Tr. 206).

The plaintiff was seen by Dr. Pintavorn in August 2006, February 2007, and June 2007. After each of these visits, Dr. Pintavorn noted that the plaintiff was doing well and no functional limitations were assessed (Tr. 207-09).

During July 2007, the plaintiff underwent a consultative psychological evaluation by Sherry Rieder, Ph.D. The plaintiff reported that she managed a number of tasks including "tidying rooms," making beds, dusting, washing dishes, driving, shopping independently, babysitting for her grandchildren, watching television, and reading inspirational material. Dr. Rieder diagnosed an adjustment disorder with depressed mood and assessed the plaintiff's global assessment of functioning (GAF) at 65, indicative of mild symptoms. She also indicated that the plaintiff's adjustment disorder would likely improve significantly with treatment. Dr. Rieder also determined that the plaintiff's impairment moderately limited her abilities to understand, remember and carry out simple instructions,

7

to interact appropriately with others, and to respond appropriately to usual work situations (Tr. 210-11).

At the hearing, the plaintiff testified that she left her last job because of the pressure to get her job finished (Tr. 242) and that the main problem keeping her from returning to work was her blood pressure (Tr. 243). She also testified that she had a driver's license, but drove only to the grocery store and returned home, that she lived with her son, and that her son and daughter-in-law did not require her to do any household chores (Tr. 237, 251).

In response to a hypothetical question, vocational expert Arthur Schmitt testified that a person of the plaintiff's age, education and residual functional capacity – which included a sit/stand option at will and low stress – could perform the jobs of tobacco sampler and storage facility clerk (Tr. 260). He also testified that his descriptions of the jobs were consistent with the *Dictionary of Occupational Titles* ("DOT") and that his testimony regarding the sit/stand option and low stress limitations was based on his professional knowledge (Tr. 260).

## ANALYSIS

The plaintiff alleges disability since May 20, 2004, due to stage IV chronic renal disease, uncontrolled high blood pressure, and loss of vision in her right eye. She was 49 years old at the time of her alleged onset of disability. She has a high school education and past relevant work experience as a textile mill machine tender. The ALJ found that the plaintiff had the residual functional capacity to perform light unskilled work with no climbing or crawling and an accommodation for a sit/stand option at will and a restriction from work requiring exposure to work hazards. He also found that the plaintiff was restricted to work in a low stress environment (requiring only occasional decision-making and changes in the work setting) with only occasional exposure to the general

public and that she could not perform fine visual acuity. The plaintiff argues that the ALJ erred by (1) failing to specify the extent she is limited in the ability to stand and walk; (2) failing to find that she is disabled under the Medical-Vocational Guidelines; (3) accepting incorrect vocational expert testimony that conflicts with the *Dictionary of Occupational Titles* ("DOT"); (4) failing to consider all of her severe impairments; and (5) failing to properly evaluate her credibility.

***Sit /Stand Option***

The ALJ found that the plaintiff had the RFC for light work[3] with certain limitations, including an accommodation for a sit/stand option at will. The plaintiff argues that the ALJ erred by failing to specify the frequency that she would need to alternate sitting and standing and the length of time she would need to sit. The plaintiff relies on Social Security Ruling 96-9p, which states, "The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." SSR 96-9p, 1996 WL 374185, *7. As noted by the defendant, that ruling is applicable to cases where an individual is found to have an RFC for less than a full range of sedentary work, which is not the case here.

The plaintiff argues that the AlJ's lack of specificity as to how much she can sit or stand essentially restricts her to a sitting job. Under the Medical-Vocational Guidelines ("the grids"), the plaintiff, as a person closely approaching advanced age, would be disabled is she was limited to sedentary work. *See* 20 C.F.R. pt. 404, subpt. p, app. 2, rule 201.14. However, as argued by the defendant, the plaintiff's argument is flawed as the AlJ did not find that she was required to sit at least six hours a day, which is the sitting requirement for sedentary work. The plaintiff points to no case law supporting her position.

---

[3]The ALJ noted in his opinion that light work requires an ability to stand, sit, and walk each for 6 hours in an 8-hour workday (Tr. 14, n. 2).

9

Furthermore, no physician opined that the plaintiff was limited to sedentary work. Moreover, the only medical evidence of exertional limitations is found in the agency's medical consultant's reports that indicated the plaintiff was capable of performing the exertional requirements of light work (Tr. 167-74, 183-90). Based upon the foregoing, the plaintiff's first and second allegations of error are without merit.

*Vocational Expert Testimony*

The plaintiff next argues that the vocational expert failed to explain the inconsistency between his testimony and the information provided in the *Dictionary of Occupational Titles* ("DOT"). In the instant case, the vocational expert testified that an individual with the plaintiff's age, education and RFC, which included a requirement for a sit/stand option, was capable of performing other work that exists in the national economy in significant numbers (Tr. 260). The ALJ identified the occupations of tobacco sampler and storage facility clerk (Tr. 260). The ALJ asked the vocational expert if his answer "was consistent with the DOT, and in regard to the sit/stand option and the low stress limitations, you have professional knowledge of their availability?" The vocational expert replied "That's correct" (Tr. 260). In his decision, the ALJ acknowledged that there was a conflict between the vocational expert's testimony regarding a sit/stand option and the DOT (Tr. 19). The ALJ further determined that the vocational expert's reason for the conflict was reasonable and that his testimony was reliable since it was based on his first-hand or professional knowledge (Tr. 19).

"[I]n order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (citation omitted).

> Social Security Ruling 00-4p provides in pertinent part:
>
> When a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT. In these situations, the adjudicator will:
>
> Ask the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT; and
>
> If the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, 2000 WL 1898704, *3.

Social Security Ruling 00-4p states that a reasonable explanation that may provide a basis for relying on the evidence from a vocational expert rather than on the DOT information may be based on the vocational expert's personal experience in job placement or career counseling. *Id*. at *2.  *See Fisher v. Barnhart*, 181 Fed. Appx. 359, 365-66 (4th Cir. 2006) (unpublished)). Neither the DOT nor vocational expert testimony automatically "trumps" when there is a conflict. The ALJ must resolve the conflict by determining if the explanation given by the vocational expert is reasonable and provides a basis for relying on the testimony rather than on the DOT.   Here, the "reasonable explanation" provided by the vocational expert was simply an affirmative answer to the ALJ's question as to whether the conflicting answer was based upon his personal experience.  This court recommends that upon remand the ALJ should be instructed to inquire further regarding the specific jobs identified by the vocational expert, the need for a sit/stand option at will, and the vocational expert's professional knowledge of the existence of such jobs.

*Severe Impairments*

The ALJ found that the plaintiff's only severe impairments were her high blood pressure with loss of bilateral retinopathy and loss of vision on the right and an adjustment

11

disorder (Tr. 12). The plaintiff argues that the ALJ erred in failing to find that her chronic kidney disease was also a severe impairment and further failing to consider the impact of the disease on her residual functional capacity ("RFC"). The plaintiff further argues that the ALJ erred by failing to include in the RFC the restriction on work requiring depth perception and far acuity. This court agrees.

An impairment is severe when it is more than a slight abnormality that has more than a minimal effect on the ability to do basic work activities. *See* Social Security Ruling (SSR) 96-3p; 20 C.F.R. §§ 404.1520(a), 404.1521; *see also, e.g., Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984) (citations and internal punctuation omitted).

> The Residual Functional Capacity ("RFC") assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work- related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.
> . . .

SSR 96-8p, 1996 WL 374184, *7.

In a disability case, the combined effect of all the claimant's impairments must be considered without regard to whether any such impairment if considered separately would be sufficiently disabling. Where there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's 'ability to engage in substantial gainful activity.'" *Oppenheim v. Finch*, 495 F.2d 396, 398 (4th Cir. 1974). The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. *Id.* The

12

cumulative or synergistic effect of the various impairments on the claimant's ability to work must be analyzed. *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

Here, it is well documented that the plaintiff has stage IV chronic kidney disease (Tr. 137-38, 195, 206-209). Dr. Akhtar noted that the plaintiff "may have some element of fluid retention given her significant renal disease" (Tr. 206). In addition, the plaintiff complained of fatigue, which is also a symptom of kidney disease (Tr. 222-23; pl. brief 19-20). The plaintiff testified that she was told her tiredness may be related to her kidney disease (Tr. 245). Upon remand, the ALJ should be instructed to consider the impact of the plaintiff's chronic kidney disease on her RFC.

The ALJ accepted the plaintiff had severe visual impairments and restricted her to work that did not require fine visual acuity (Tr. 14). However, the state agency doctor restricted the plaintiff as well from work requiring depth perception and far acuity (Tr. 170). The ALJ noted the state agency opinion and stated that he had "elected to impose additional limitations upon the claimant's residual functional capacity as detailed above" (Tr. 17). The ALJ did not indicate in the hearing decision any reason for intentionally omitting the restrictions from work requiring depth perception and far acuity. As argued by the plaintiff, it is unclear what impact these additional restrictions would have had on the vocational testimony. Accordingly, upon remand, the ALJ should be instructed to include these restrictions in a hypothetical question to the vocational expert.

### *Credibility*

The ALJ stated in the hearing decision, "Also detracting from the claimant's testimony is the fact that the record indicates she has been non-compliant with respect to her prescribed medications" (Tr. 16). The plaintiff argues that the evidence shows she had no income and relied on samples that her doctor was willing to give her for her medications

(Tr. 238, 250). Thus, the plaintiff argues that the ALJ's analysis of her credibility based on her noncompliance with medication is not supported by substantial evidence and is in error.

The Fourth Circuit Court of Appeals has stated as follows with regard to the analysis of a claimant's subjective complaints:

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . . It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig v. Chater*, 76 F.3d 585, 593, 595 (4th Cir. 1996). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." Furthermore, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." SSR 96-7p, 1996 WL 374186, *4.

The factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

(1)     the individual's daily activities;

(2)     the location, duration, frequency, and intensity of the individual's pain or other symptoms;

14

      (3)    factors that precipitate and aggravate the symptoms;

      (4)    the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

      (5)    treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

      (6)    any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

      (7)    any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, *3.

      The Commissioner's regulations and rulings state that a claimant who would otherwise be found disabled, but fails without justifiable cause to follow treatment prescribed by a treating source which the Agency determines can be expected to restore the claimant's ability to work, cannot by virtue of such "failure" be found to be disabled. *See* 20 C.F.R. §§ 404.1530, 416.930. The Agency may make a determination that an individual has failed to follow prescribed treatment only where all of the following conditions exist: (1) the evidence establishes that the individual's impairment precludes engaging in any substantial gainful activity; (2) the impairment has lasted or is expected to last for 12 continuous months from onset of disability or is expected to result in death; (3) treatment which is clearly expected to restore capacity to engage in any substantial gainful activity has been prescribed by a treating source; and (4) the evidence indicates that there has been a refusal to follow prescribed treatment. "When the [Agency] makes a determination 'failure,' a determination must also be made as to whether or not failure to follow prescribed treatment is justifiable. SSR 82-59, 1982 WL 31384, at *1.

> SSR 96-7p provides:
>
> [T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner. The explanations provided by the individual may provide insight into the individual's credibility. For example:
>
> * The individual's daily activities may be structured so as to minimize symptoms to a tolerable level or eliminate them entirely, avoiding physical or mental stressors that would exacerbate the symptoms. The individual may be living with the symptoms, seeing a medical source only as needed for periodic evaluation and renewal of medications.
>
> * The individual's symptoms may not be severe enough to prompt the individual to seek ongoing medical attention or may be relieved with over-the-counter medications.
>
> * The individual may not take prescription medication because the side effects are less tolerable than the symptoms.
>
> * The individual may be unable to afford treatment and may not have access to free or low-cost medical services.
>
> * The individual may have been advised by a medical source that there is no further, effective treatment that can be prescribed and undertaken that would benefit the individual.
>
> * Medical treatment may be contrary to the teaching and tenets of the individual's religion.

96-7p, 1996 WL 374186, at **7-8.

Here, the ALJ did not consider "any explanations that the [plaintiff] may provide" for her failure to consistently take her medication, such as inability to afford the medication or intolerable side effects. Upon remand, the ALJ should be instructed to make

16

the required analysis, including recontacting the plaintiff or questioning her at a supplemental hearing if needed, before drawing any inferences as to the plaintiff's credibility from her noncompliance.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, this court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. §405(g), with a remand of the cause to the Commissioner for further proceedings as discussed above.

s/William M. Catoe
United States Magistrate Judge

June 25, 2009

Greenville, South Carolina